UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| SHAWN SANDLER, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 11-206-GFVT |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| UNITED STATES OF AMERICA, | ) | **&** |
| | ) | **ORDER** |
| Defendant. | ) | |

\*\*\*\*   \*\*\*\*   \*\*\*\*   \*\*\*\*

Plaintiff Shawn Sandler is an individual confined in the United States Penitentiary-McCreary ("USP-McCreary") in Pine Knot, Kentucky. Proceeding *pro se*, Sandler has filed a complaint asserting negligence claims against the United States of America under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–2680 ("FTCA"). [R. 2] In response to Sandler's complaint, the United States has moved to dismiss, pursuant to Fed. R. Civ. P. 12(b), or in the alternative, for summary judgment pursuant to Fed. R. Civ. P. 56. [R. 20] Sandler has filed a response thereto [R. 33] and has supplemented said response. [R. 41] The United States having filed a reply to Sandler's response [R. 37] and has supplemented [R. 42], this matter has been fully briefed and is ripe for review.

For the reasons detailed below, the Court concludes that the defendant United States is entitled to summary judgment. Its motion to dismiss, or alternatively, for summary judgment will be granted, and this matter will be dismissed.

**I**

This action concerns the health care Sandler received at USP-McCreary subsequent to his transfer from FCI-Allenwood on or about November 12, 2009. To properly assess Sandler's complaint, it is necessary to review not only Sandler's BOP medical records compiled at USP-McCreary, but also his relevant BOP medical records compiled while he was housed at FCI-Allenwood. A chronology of Sandler's relevant BOP medical records follows:

**A**

**1**

On September 4, 2009, Sandler was evaluated at the Health Services clinic at FCI-Allenwood complaining that he had had a hiatal hernia for a number of years and that it was causing him "all sorts of pain." [R. 20-14, p. 1] The examiner, PA Ralph Roces, assessed Sandler with a diaphragmatic hernia, but noted that he could not find any documentation in Sandler's medical records to support this assessment [*Id.*, p. 2]. Sandler was prescribed pain medication at that time, and x-rays were done, but did not show the presence of such hernia. [*Id.*, at pp. 4-5]. However, the X-ray specialist, Dr. Anis Frayha, suggested that a more detailed examination, such as a CT scan of Sandler's abdomen, would be beneficial in determining the presence of a hiatal hernia. On October 26, 2009, the Utilization Review Committee ("URC") reviewed Sandler's request for a CT scan or general surgery and concluded that he met the general criteria as determined by the URC, approved his request, and advised him that an in-house appointment with a consultant would be scheduled. [*Id.*, at p. 13] However, the appointment with the consultant did not occur due to Sandler's transfer to USP-McCreary on November 9, 2009.

**2**

On October 20, 2009, Sandler was seen by PA Roces during sick call at the SHU, complaining that a left hip he allegedly dislocated years ago was now "out of place" and at times was causing pain. [*Id.*, at p. 10] Sandler complained of pain in both legs and believed that he had a dislocated hip pushing backwards "into his nerves." [*Id.*, at p. 12] He was examined and x-rays were requested. [*Id.*, at p. 10-12] On October 22, 2009, PA Roces noted in the records that he had evaluated Sandler's complaint, and that he thought Sandler had a deformity on his left hip. [*Id.*, at p. 12] PA Roces indicated that once the x-ray results were received and evaluated, Sandler would be informed of further treatment and other evaluations if possible. [*Id.*] Sandler was given Ibuprofen for his back pain.

On November 4, 2009, an Inmate Transfer form was prepared for the transfer of Sandler from FCI Allenwood to USP McCreary. [*Id.*, at p. 140] The transfer form noted a diaphragmatic hernia, with the clarification that "[the] patient stated this but I can't find any documentation supporting this." [*Id.*] The only medication noted at that time was Ibuprofen, which Sandler had been given for his complaints of pain in his left hip. [*Id.*] On November 13, 2009 the Inmate Transfer form was reviewed by USP-McCreary's Health Services, and a Health Screen was conducted. [*Id.*, at pp. 19-25] During the health screening, Sandler denied having any current painful condition. [*Id.*, at p. 22] Sandler's medical duty status was prepared with no work or physical restrictions. [*Id.*, at p. 25]

**B**

**1**

On December 4, 2009, Sandler was seen at sick call by PA Bryant, complaining of lower extremity pain. [*Id.,* at pp. 26-27] Sandler indicated that he had had a dislocated hip since 1996

and had been scheduled to go see an orthopedic doctor, but was transferred before he was able to go. [*Id.*] He complained of daily pain of six on a scale of one to ten. However, an examination of his left hip revealed a full range of motion, no swelling, no tenderness and no crepitus. [*Id.*] New bilateral hip and lumbar area x-rays were requested by PA Bryant. [*Id.*] X-rays of both his left and right hip (for comparison) were taken with negative results. [*Id.*, at p. 28] On the same date, lumbar x-rays were also taken with negative results. [*Id.*, at p. 29]

On December 22, 2009, Sandler was seen at sick call by Registered Nurse Barnett for left hip pain that had been bothering him "on and off" but denied having pain at the time. [*Id.*, at pp. 30-32] Sandler was informed of his negative x-ray results and was instructed to follow up with his medical care providers. [*Id.*]

**2**

On January 21, 2010, Sandler was taken to Jellico Community Hospital in Jellico, Tennessee, for a CT scan of his abdomen due to acute stomach problems and a possible hiatal hernia. [R. 20-15, at pp. 1-2] The study found a very small hiatal hernia with only degenerative changes.[1] [*Id.*] On February 17, 2010, Sandler was seen at Health Services for a superficial laceration to the right side of his head after accidentally being struck with a paddle. [*Id.*, at pp. 3-4] The wound was cleaned, steri-strips were applied, and Sandler was discharged. [*Id.*]

On October 8, 2010, Sandler was seen in a sick call at Health Services by PA Bryant for complaints of lower back pain and hip pain. He stated that he had been in a fight at another

---

[1] The hiatal hernia showed no hepatosplenomegaly (enlargement of the liver and spleen); no pancreatic or adrenal gland enlargement; no hydronephrosis (swelling of kidneys when urine flow is obstructed in any part of the urinary tract); no nephrolithiasis (process of forming a kidney stone, a stone in the kidney, or lower down in the urinary tract); no perinephric fluid (connective and fatty tissue surrounding a kidney); and no significant retroperitoneal (pertaining to organs closely attached to the posterior abdominal wall and partly covered by the peritoneum) adenopathy (swelling or abnormal enlargement of the lymph nodes). [*Declaration of Richard Ramirez, M.D.,* pp. 4-5; R. 20-12, pp. 4-5].

4

institution when the pain started. [*Id*., at pp. 5-6] The examination indicated a hip with full range of motion, no crepitus on the back, but a bony abnormality was noted in the left side of his spine. [*Id.*] On October 18, 2010, x-rays were taken of Sandler's hips and spine. [*Id*., at pp. 7-8] Hip x-rays were negative, and spinal x-rays were negative except for mild degenerative joint disease or disc disease.[2] [*Id.*] On October 27, 2010, Sandler was seen at Health Services, notified of the x-ray results, and placed on Mobic[3] due to the chronic back pain. [*Declaration of Richard Ramirez, M.D.,* pp. 4-5; R. 20-12; Collective C at P41-P42.]

On November 21, 2010, Sandler filed an Inmate Request for Staff to Health Services complaining of pain in his *right* hip because he felt it "tweak." [*Id*., at pp. 11]; [R. 20-16, pp. 1-2] On November 24, 2010, Sandler was instructed to sign up for sick call. [R. 20-15, at p. 11]

3

On March 1, 2011, a Chronic Care encounter was performed at Health Services by Dr. Vazquez-Velazquez. [R. 20-16, at pp. 1-3] Sandler was assessed for his back pain, and laboratories and new medications were ordered. [*Id.*]

April 26, 2011, Sandler was taken to sick call by correctional staff due to complaints of dizziness, numbness, and pressure behind the eyes. [*Id.,* at pp. 4-8] Sandler stated that he would get "woozy" when moving around, but denied pain and said he was taking allergy pills due to sinus drainage. [*Id*.] An ECG[4] was performed, and Sandler's exam was normal except for an irritated and reddened left ear canal. [*Id.*] Sandler also complained of upper back pain and

---

[2]Degenerative disc disease is not a disease *per se*; it is a term used to describe the normal changes in the spinal discs associated with the aging process. [*Declaration of Richard Ramirez, M.D.,* p. 5; R. 20-12, p. 5].
[3]Mobic (meloxicam) is a nonsteroidal anti-inflammatory drug (NSAID). Meloxicam works by reducing hormones that cause inflammation and pain in the body. [*Declaration of Richard Ramirez, M.D.,* p. 5; R. 20-12, p. 5].
[4]The electrocardiogram (ECG or EKG) is a diagnostic tool that is routinely used to assess the electrical and muscular functions of the heart**.** [*Declaration of Richard Ramirez, M.D*., p. 6; R. 20-12, p. 6].

numbness, and believed it to be related to an unspecified back injury. [*Id*.] He was provided antibiotics and was advised that the condition did not appear to be cardiac, but to report back to medical if it worsened. [*Id.*] He was placed on work restriction, and confined to his living quarters for the remainder of the day. [*Id.*]

On July 1, 2011, and August 2, 2011, Sandler was seen at Health Services for two separate work-related injuries resulting in injuries to his fingers. [*Id.*, at pp. 12-26] On August 17, 2011, Sandler was seen at Health Services for an optometry consultation, and was provided with reading glasses on that date. [*Id.*, at pp. 27-29] On September 19, 2011, Sandler was seen at sick call complaining of the sensation of something in his eye, but denied trauma or exposure to a foreign body. [*Id.*, at pp. 30-31] He was diagnosed with conjunctivitis and was provided with medication. [*Id.*] On September 21, 2011, Sandler was seen at Health Services for an optometry consult, was diagnosed with a superficial injury of the cornea, and was provided with medication for the injury. [*Id.*, at pp. 32-34] Sandler missed a scheduled optometry appointment on October 5, 2011, and again on October 18, 2011. *Id.*, at pp. 35-36]

On December 14, 2011, Sandler filed an Inmate Request to Staff complaining that his back was getting worse and that he was having numbness in his leg. Nevertheless, he failed to show for his sick call appointment on December 16, 2011. [*Id.*, at pp. 37-38]

**4**

On January 4, 2012, Sandler filed an Inmate Request to Staff complaining that his back was bothering him and that he had numbness in his legs. [R. 20-17, p. 1] On January 6, 2012, Sandler again failed to appear for his sick call appointment. [*Id.*, at p. 2] On January 16, 2012, Sandler filed an Inmate Request to Staff complaining that his back was getting worse and that he needed to see someone as soon as possible. On January 19, 2012, Sandler was seen during a sick

call encounter at Health Services for his complaints of lower back pain and left hip pain. [*Id.,* at pp. 4-6] Sandler was instructed to purchase pain medications from the commissary. An x-ray was ordered for his lower back. [*Id.*]

On April 10, 2012, Sandler was seen at Health Services after cutting his finger in a work-related injury. [*Id.*, at pp. 12-14] The cut was cleansed and bandaged, and he was instructed to return to sick call if his condition worsened. [*Id.*] On April 11, 2012, an x-ray was taken of the Sandler's lumbar lateral area for left hip pain. It was determined to be negative except for moderate degenerative disc disease. [*Id.*, at pp. 19-20] On April 12, 2012, Sandler was seen for a Chronic Care follow up visit at Health Services for his lower back pain. [*Id.*, at pp. 15-18] During the visit, Sandler complained of back pain; that when he sneezes his legs buckle and cause imbalance; that sometimes he is incontinent of urine; and that he recently had x-rays taken but the results were pending. [*Id.*] Sandler had negative x-rays for his hip, pelvis, and spine; and had a negative abdominal ultrasound.[5] [*Id.*] He was also noted to have a "bony like prominence" when in a position of flexion that is deviated to the left, and it was recommended that he undergo an MRI. [*Id.*] Finally, it was noted that Sandler had no complaints in regard to his small hiatal hernia. [*Id.*]

On April 23, 2012, Sandler was seen for sick call at Health Services, complaining of pain in his left side and wanting to get the results of his x-ray. [R. 20-17, at pp. 23-28] Sandler complained of numbness and tingling in his left hip, as well as down both legs. [*Id.*] He was found to be stable and was instructed to go through the pill line for his medication, Gabapentin[6], for the next seven days. [*Id.*] He was also informed that his x-ray noted moderate degenerative

---

[5]An abdominal ultrasound uses reflected sound waves to produce a picture of the organs and other structures in the upper abdomen. [*Declaration of Richard Ramirez, M.D.,* p. 10; R. 20-12, p. 10]

7

disc disease. [*Id.*] On April 29, 2012, Sandler filed an Inmate Request to Staff, complaining that the medications he had been prescribed made him sick. [*Id.*, at p. 29]

On June 11, 2012, Sandler failed to appear for his follow-up encounter at Health Services for his complaints of back pain. [*Id.*, at p. 33] On June 12, 2012, Sandler was seen for an evaluation encounter at Health Services for chronic lower back pain. [*Id.*, at pp. 34-35] Dr. Vazquez-Velaquez examined Sandler; his assessment was low back pain or lumbago.[7] [*Id.*] Dr. Vazquez-Velaquez prescribed Amitriptyline[8] tablets and a one-time dose of Meloxicam[9] for Sandler. [*Id.*, at pp. 35-38]

On June 21, 2012, the Utilization Review Committee (URC) reviewed the request for an MRI of Sandler's lumbar spine. [*Declaration of Richard Ramirez, M.D.,* p. 12; R. 20-12, p. 12]. The URC referred the request to the staff physician at USP-McCreary for further evaluation. [*Id.*, at p. 39]

On August 23, 2012, Sandler was seen at sick call for Health Services, complaining of hernia pain in the abdomen. [*Id.*, at pp. 46-47] He was examined and was provided with an ace wrap to support his abdomen. [*Id.*] On September 28, 2012, Sandler was seen in a Chronic Care encounter at Health Services, complaining of progressively worsening lower back pain for the past three years. [*Id.*, at pp. 52-55] Sandler indicated that the pain was initially in his left leg, but now had moved to both legs. [*Id.*] He requested an MRI and also asked to wear the ace wrap due to his "large" hernia. [*Id.*] Sandler was examined and assessed with lower back pain, lumbago, with a full range of movement. [*Id.*] No deformities, nodules, and contractures were

---

[6]Gabapentin is an anti-epileptic medication, also called an anticonvulsant. It affects chemicals and nerves in the body that are involved in the cause of seizures and some types of pain. [*Declaration of Richard Ramirez, M.D.,* p. 11; R. 20-12, p. 11].
[7]Lumbago is pain in the lumbar region of the back.[*Declaration of Richard Ramirez, M.D.,* p. 12; R. 20-12, p. 12].
[8]Amitriptyline, aka Elavil, is and antidepressant sometimes given as an adjuvant pain medication to chronic back pain sufferers. [*Declaration of Richard Ramirez, M.D.,* p. 12; R. 20-12, p. 12].

noted. [*Id.*] A new x-ray request was made, and a follow up Chronic Care visit was scheduled for March 14, 2013. [*Id.*] Sandler was prescribed Ibuprofen (800 mg.) for his back pain, was allowed to utilize the ace wrap for his small hiatal hernia, and was advised that his request for an MRI is awaiting URC decision. [*Id.*]

### 5

In 2013, Sandler's request for an MRI of his lumbar spine was approved. On May 29, 2013, Sandler underwent an open MRI of his lumbar spine without intravenous contrast. [R. 41-2, pp. 1-2] The MRI report indicated that Sandler's paraspinal area was normal and that the lumbar disc levels for L1-L2, L2-L3, L3-L4 were normal for his age. However, degenerative disc disease was observed in two different places in his lumbar spine, at L4-L5 and at L5-S1. Specifically, the report stated:

> L4-L5: There is disc desiccation indicating degenerative disc disease with no evidence of disc herniation.
> L5-S1: There is disc desiccation and mild disc space narrowing with a small to moderate-sized broad-based mixed protrusion. There was no canal stenosis. There is mild to moderate narrowing of the lateral recesses and neural foramina left greater than right. No definite nerve root displacement or compression is seen, however.

[*Id.*]

### II

### A

Fed.R.Civ.P. 12(b) provides for the dismissal of claims and parties for seven listed reasons. Subsection (b)(6) provides for dismissal for failure to state a claim upon which relief can be granted. Thereafter, Rule 12 continues, in subsection (d), as follows:

> (d)  Result of Presenting Matters Outside the Pleadings.  If, on a motion under Rule 12(b) or 12(c), matters outside the pleadings are

---

[9]Meloxicam is in a class of drugs called nonsteroidal anti-inflammatory drugs and are used to treat pain and/or inflammation. [*Declaration of Richard Ramirez, M.D.,* p. 12; R. 20-12, p. 12].

> presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties shall be given reasonable opportunity to present all material made pertinent to the motion.

*Id.* Thus, the plain language of Rule 12(d) permits a 12(b)(6) motion to be converted into a motion for summary judgment. As the moving defendants herein have submitted the *Declaration of Carlos J. Martinez*, plus the attachments thereto, and the *Declaration of Richard Ramirez, M.D.*, plus the attachments thereto, including Sandler's medical records maintained by the BOP for the period of time from September 4, 2009, to September 28, 2012, (which the Court has considered in evaluating the defendant's motion [R. 20)])[10], summary judgment standards will be applied.

In considering a motion for summary judgment, the Court must determine whether there are "no genuine issues as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corporation v. Catrett*, 477 U.S. 317, 322, (1986).

The Supreme Court has directed that a court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The significant question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477

---

[10]The Court has also considered the BOP medical records Sandler submitted in support of his opposition to the defendant's dispositive motion. These medical records are comprised of seven pages, are an exhibit to his motion

U.S. 242, 251-53, (1986). The moving party has the burden of showing there is an absence of evidence to support a claim. *Celotex*, 477 U.S. at 324-25. After a moving party carries its burden, the non-moving party must go beyond the pleadings to designate by affidavits, depositions, answers to interrogatories, and admissions on file, specific facts showing that there is a genuine issue of material fact for trial. *Id.* With these standards in mind, the Court examines the defendant's motion.

**B**

Under the FTCA, a plaintiff may recover monetary awards from the United States for injury, property loss, or death "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope . . . of employment." 28 U.S.C. § 1346(b). The United States may be held liable only if the conduct complained of amounts to negligence "in accordance with the law of the place where the act or omission occurred." [Id.] Thus, liability under the FTCA is governed by state law. See *Rayonier Inc. v. United States*, 352 U.S. 315 (1957); *Huffman v. United States*, 82 F.3d 703, 705 (6th Cir. 1996). This extends to claims of medical malpractice. *See Vance v. United States*, 90 F.3d 1145, 1148 (6th Cir. 1996). In the present action, the alleged negligent acts occurred in Kentucky, making Kentucky state tort law applicable to this case. *Rayonier*, 352 U.S. at 315.

For a plaintiff to establish a cause of action for common law negligence in Kentucky, he must prove the following elements: (1) duty of care; (2) breach of that duty; (3) actual injury, and (4) that the injury was proximately caused by the negligence. The absence of any one of the elements is fatal to the claim. *See Mullins v. Commonwealth Life Ins. Co.*, 839 S.W.2d 245 (Ky. 1997); *Watters v. TSR, Inc.*, 904 F.2d 378 (6th Cir. 1990). Furthermore, expert testimony is

---

for leave to supplement his opposition to defendant's motion for summary judgment, and are of record at R. 41-2, pp. 1-7.

generally required to show that a medical provider failed to conform to the applicable standard of care, and thus caused the injury of which Plaintiff complains. *See Vance by and through Hammons v. United States*, 90 F.3d 1145, 1148 (6th Cir. 1996). The expert's opinion must be based "on reasonable medical probability and not speculation or possibility." *Sakler v. Anesthesiology Associates, P.S.C.*, 50 S.W.3d 210, 213 (Ky.App. 2001).

In *Heavrin v. Jones*, No. 02-CA-000016-MR, 2003 WL 21673958, at *1 (Ky. Ct. App. July 18, 2003), the Kentucky Court of Appeals set forth the elements required to establish a cause of action for medical malpractice under Kentucky law:

> To establish a prima facie case of medical malpractice, a plaintiff must introduce evidence, *in the form of expert testimony*, demonstrating (1) the standard of care recognized by the medical community as applicable to the particular defendant, (2) that the defendant departed from that standard, and (3) that the defendant's departure was a proximate cause of the plaintiff's injuries.

*Id.* (emphasis added). As indicated herein, except in very limited circumstances, in a medical negligence case, the plaintiff "is required to present expert testimony that establishes (1) the standard of skill expected of a reasonably competent medical practitioner and (2) that the alleged negligence proximately caused the injury." *Andrew v. Begley*, 203 S.W.3d 165, 170 (Ky. App. 2006).

Sandler has failed to present, through requisite expert testimony, that the claimed failure to act on his alleged complaints of pain by sending him to an outside facility for further tests or evaluation was a deviation from the applicable standard of medical care, and that the alleged failure proximately caused an injury. "It is the Plaintiff's burden to find a doctor who will testify to the standard of treatment of each condition and testify that in his or her expert opinion, the standard was breached by the federal employee(s) in this case." *Hernandez v. United States*, No. 08-CV-195-KSF, 2009 WL 1586809 *6 (E.D. Ky. June 5, 2009). Sandler has not met this

burden.  *See also Baylis v. Lourdes Hosp., Inc.*, 805 S.W2d 122, 124 (Ky. 1991) ("It is an accepted principle that in most medical negligence cases, proof of causation requires the testimony of an expert witness because the nature of the inquiry is such that jurors are not competent to draw their own conclusions from the evidence without the aid of such expert testimony.")

As previously stated, there are two narrow circumstances under which a plaintiff can proceed with a medical negligence claim in the absence of expert testimony.  The two exceptions to the expert witness rule that have been recognized in Kentucky both involve the application of the doctrine of *res ipsa loquitur*.  *See Perkins v. Hausladen*, 828 S.W.2d 652, 655 (Ky. 1992).

The first exception occurs when "the negligence and injurious results are so apparent that a layman with general knowledge would have no difficulty recognizing it."  *Morris v. Hoffman*, 551 S.W.2d 8, 9 (Ky. 1977).  This exception is "illustrated by cases where the surgeon leaves a foreign object in the body or removes or injures an inappropriate part of the anatomy."  *Andrew v. Begley*, 203 S.W.2d at 170.  In Sandler's case, he has not set forth any proof whatsoever within the ambit of this exception.  Complaints of persistent pain subsequent to medical care are insufficient to establish an inference of medical malpractice to circumvent the necessity of evidence from an expert.  *Buerger v. Ohio Dept. of Rehab & Corr.*, 64 Ohio App. 3d 394, 399 (1989); *see also Matthews v. Robinson*, 52 F. App'x. 808 (6th Cir. 2002) (The evidence presented by the plaintiff was insufficient to permit a layman with general knowledge to recognize medical malpractice; plaintiff should have retained an expert witness to testify in support of malpractice claim.)

The second exception to the general expert witness rule is when "'medical experts may provide a sufficient foundation for *res ipsa loquitur* on more complex matters.'"  *Andrew v.*

13

*Begley*, 203 S.W.3d at 170-71, (quoting Prosser and Keeton on Torts, Sec. 39 (5th ed. 1984)). An example of this exception is when "the defendant doctor makes admissions of a technical character from which one could infer that he or she acted negligently." [Id. at 171.] The record in Sandler's case is totally devoid of any examples of any admissions of a medical professional at USP-McCreary from which it could be inferred that he or she acted negligently in his or her treatment of Sandler. Thus, this exception to the expert witness rule is likewise inapplicable.

Sandler has failed to prove a *prima facie* case of medical malpractice under Kentucky law by supporting his claims through by expert testimony establishing a deviation from the standard of care and that the alleged negligent act proximately caused an actual injury, if any. "Kentucky law requires a medical malpractice plaintiff to support [his] allegations that the defendant physician's treatment did not meet the applicable standard of care with expert testimony to this effect as part of his prima facie case." *Cuco v. United States*, CV:5-07-338-JMH, 2008 WL4526196, 2 (E.D.Ky. September 30, 2008). As such, there is no genuine issue of material fact as to these elements, and summary judgment in favor of the United States is appropriate. *See Andrew v. Begley*, 203 S.W.3d at 170 ("To survive a motion for summary judgment in a medical malpractice in which a medical expert is required, the plaintiff must produce expert evidence or summary judgment is proper.")

## C

Sandler alleges that USP-McCreary Health Services failed to provide effective medication, failed to provide an MRI, misdiagnosed his condition, and failed to provide treatment and/or properly treat his hip "injury." [R. 2] Other than Sandler's speculative and conclusory allegations, he has presented no evidence to support the claim that he was misdiagnosed, that he was provided with ineffective medication, that he needed an MRI and/or

14

that USP-McCreary's Health Service personnel rendered improper treatment for his hip injury.

As previously stated, under Kentucky law, a plaintiff alleging medical malpractice must prove, through expert testimony, that the medical provider failed to adhere to the standard of care of a reasonably competent practitioner in the same medical field, proximately causing the injury. *See Cole v. Growse*, No. CV: 07-CV-61-KSF, 2008 WL 695355 (E.D.Ky. March 12, 2008) (Having failed to produce any evidence that treatment fell below applicable standard of care, let alone support in the form of expert testimony, the defendant was granted summary judgment).

Despite Sandler's assertions to the contrary, he failed to prove the first element of medical negligence: that there was a deviation from the standard of care or a breach of duty. Sandler's BOP medical records clearly show that he has been treated and is still being treated by the Health Services Department at USP-McCreary. Dr. Richard Ramirez, the BOP's Regional Medical Director, has reviewed Sandler's BOP medical records. His review is contained in his Declaration dated October 24, 2012. [R. 20-12] As noted by Dr. Ramirez, the treatment of Sandler's hip problems has been conservative, consisting of over-the-counter medications, pain management, and anti-inflammatories, all of which is appropriate treatment relative to his medical condition. [*Declaration of Richard Ramirez, M.D.,* pp. 15-16; R. 20-12, pp. 15-16]. In his Declaration, Dr. Ramirez summarizes Sandler's medical treatment and his medical condition and the basis for the treatment Sandler has received. His Declaration states in relevant part that:

> 4.  The Plaintiff is currently being treated by the Health Services Department at USP McCreary. The treatment of the Plaintiff's hip and back problems has been conservative, consisting of over-the-counter medications, pain management, and anti-inflammatories. X-rays were taken on December 11, 2009, October 18, 2010, and April 11, 2012, and all have shown negative results except for moderate degenerative disc disease. The Plaintiff has been examined several times by the medical staff at USP McCreary and was diagnosed with a bony abnormality on October 8, 2010. On the same day x-rays were requested for the left hip with a comparison x-ray of the right hip, and of the spine, all of which came back

15

>   negative except for mild degenerative joint disease or disc disease. X-rays would show a displaced hip, a deformity in the hip, or a bony protrusion; none were seen in the Plaintiff's x-rays. While an MRI can be considered it is not a medical necessity as the x-rays did not show a displaced hip, a deformity in the hip, or a bony protrusion and the patient simply presents a moderate degenerative disc disease. In the case at hand, the Plaintiff remains stable, with a full range of movement, without evidence or worsening of symptoms or physical impairment.
>
> 5.  The medical record at USP McCreary demonstrates that the Plaintiff has not been denied medical care, nor that he was ever provided with care that created a substantial risk of serious harm. The medical record shows that the Plaintiff has received the level of care commensurate with BOP policy and community standards and has been provided with the appropriate diagnostic tests and treatments that address his specific conditions.
>
> 6.  The medical record does not support the Plaintiff's allegations that he was not provided with treatment for his medical conditions, that his condition has been misdiagnosed, or that he needed or needs further treatment such as an MRI. The Plaintiff's request for an MRI was considered by the URC and the decision as to whether it was needed was deferred to the staff physician at USP McCreary for further evaluation. Pursuant to the negative X-ray results, the diagnosis of mild degenerative joint disease or disc disease, the numerous medical examinations, and the symptoms as described by the Plaintiff, an orthopedic surgeon and/or an MRI are not medical necessities.
>
> 7.  The Plaintiff's hip condition was appropriately monitored and followed up by USP McCreary's medical staff. The plan of care developed and implemented by the primary care providers was and is adequate and complete. Thereby the Plaintiff's condition has been properly addressed and treated.

[*Declaration of Richard Ramirez, M.D.*, pp. 15-16; R. 20-12, pp. 15-16].

The medical records at USP-McCreary demonstrate that Sandler has never been denied medical care, nor was he ever provided with care that created a substantial risk of serious harm. Moreover, Sandler has received the level of care commensurate with the BOP's policy and community standards. He has been provided with the appropriate diagnostic tests and treatments that address his complaints. While Sandler has had multiple medical problems, they have been

16

properly and promptly addressed during the many different clinical encounters noted in his medical record.  Just because Sandler may have preferred a different course of treatment does not create a viable cause of action against the United States under the FTCA or a state law claim for medical negligence.  *Estelle v. Gamble*, 429 U.S. 97 (1976).  Moreover, Sandler's non-compliance with sick call appointments  and the gaps of time between his complaints demonstrate a lack of actual concern or intolerable symptoms for the alleged hip injury.[11]

Simply put, the medical record does not support Sandler's conclusory allegations that he was not provided with treatment for his medical conditions, that his condition has been misdiagnosed, or that he needs further treatment such as an MRI[12] or an evaluation by an orthopedic specialist.  [R. 20-12, p. 16- *Declaration of Richard Ramirez, M. D.,* p. 16; Collective B: P1-P32; Collective C: P33-P43; Collective D: P44-P82; Collective E: P83-P140.]  Sandler has failed to produce the requisite expert medical testimony as to the medical condition itself, the effects of the medical condition, and the standard of care for the condition that he alleges was breached by the defendant.  Additionally, there is a lack of evidence in the medical records of any breach whatsoever of the standard of care of a reasonable medical provider with regard to Sandler's treatment. [*Id.*]

To reiterate, Sandler has failed to produce requisite expert medical testimony regarding whether the medical department at USP-McCreary breached the standard of care for the

---

[11] Sandler was advised that he was on call-out for sick call on December 16, 2011, and January 6, 2012, for his back pain.  He failed to appear for these appointments. [R. 20-12, p. 8 - *Declaration of Richard Ramirez, M. D.,* p. 8; Collective D at P80-P81, Collective E at P84.]

[12] It is noteworthy that even though an MRI test was not a medical necessity for the diagnosis and/or treatment of Sandler's lower back condition, the BOP physician at USP-McCreary approved Sandler's request for an MRI of his back.  On May 29, 2013, an open MRI was performed on Sandler's lumbar spine.  The MRI report showed only that Sandler had degenerative disc disease in two areas of his lumbar spine, L4-L5 and L5-S1.  Thus, the MRI confirms the prior diagnosis of degenerative disc disease, the same condition diagnosed by x-rays as far back as October 18, 2010, and that Sandler does not have a more serious underlying medical condition requiring more aggressive treatment.  *See* R.41-2.  In other words, the MRI report is further evidence to refute  Sandler's claim of medical negligence.

17

condition, whether the condition requires an MRI and/or further pain medication, and whether the alleged negligent act(s) (or failure to act) proximately caused any actual injuries. "A crucial aspect of a Kentucky medical negligence case is the requirement that a plaintiff establish the standard of skill expected and the opinion that the alleged negligence proximately caused the injury." *Earle v. United States*, No. 07-CV-030-Case: 6:11-cv-00206-GFVT, 2007 WL 3407455, *5 (E.D.Ky. November 14, 2007) citing *Reams v. Stutler*, 642 S.W.2d 586, 588 (Ky. 1982). Sandler has failed to meet this requirement. Additionally, neither exception to the expert testimony requirement is applicable. Because Sandler has failed to show through expert testimony that the challenged treatment was a deviation below the applicable standard of care required and that the alleged negligent act proximately caused an actual injury, his claim must be dismissed for failure to state a claim upon which relief may be granted. Therefore, the United States is entitled to judgment as a matter of law.

### III

Accordingly, for the aforementioned reasons, it is hereby **ORDERED** that:

1. The motion of defendant United States of America to dismiss, or alternatively, for summary judgment [R. 20] is **GRANTED**.

2. Pursuant to Fed. R. Civ. P. 56(c), summary judgment is entered in favor of the defendant.

3. Plaintiff Shawn Sandler's Complaint, R. 2, filed pursuant to the Federal Tort Claims Act, is **DISMISSED WITH PREJUDICE**.

4. The Court shall enter an appropriate judgment.

5. This action is **STRICKEN** from the docket of the Court.

This 30th Day of September 2013.



Signed By:
*Gregory F. Van Tatenhove*
United States District Judge